*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-040

JULY TERM, 2014

| | |
|---|---|
| In re H.D., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 52-2-13 Cnjv |

Trial Judge: Michael S. Kupersmith

In the above-entitled cause, the Clerk will enter:

Mother appeals the superior court's January 9, 2014 decision transferring custody in this CHINS case from mother to father. We reverse the January 9 decision and remand the matter for further consideration.

H.D. was born on April 4, 1998. On February 14, 2013, the Department for Children and Families (DCF) filed a petition to have H.D. and his two sisters adjudicated children in need of care and supervision (CHINS) based on mother's failure to provide the children with a stable and sanitary home and to meet the children's physical and hygienic needs. That same day, at an emergency hearing, the superior court entered an order granting mother legal custody of the children conditioned upon their residing with father until mother was able to provide them with a safe and stable home.

On April 2, 2013, the three children were adjudicated CHINS based on mother's admissions to DCF's allegations. On May 14, 2013, the superior court approved a disposition plan that continued the February 14 conditional custody order and set concurrent goals of reunification and return of the care of the children to mother, and transfer of custody to father with shared parenting as agreed by the parties. Mother had still not found suitable housing as of the July 2013 post-disposition review hearing.

On September 23, 2013, having obtained housing, mother filed a motion to modify the February 14 order to transfer placement of the children from father's residence to her. An evidentiary hearing on that motion was held on October 10, 2013. Mother testified that she had moved into a three-bedroom apartment in early September, with a one-year lease, through a subsidized housing voucher that she could maintain as long as the three children resided with her fifty-one percent of the time. A DCF case worker testified that H.D. had expressed a desire to maintain his residence with father, and the court heard some evidence concerning father's household. Other evidence regarding the suitability of father as a potential custodial parent of H.D. was excluded because a transfer of custody to father was not at issue at the hearing. The juveniles' attorney stated that H.D., who was fifteen and one-half years old at the time of the hearing, wanted to remain with his father and should be allowed to do so. DCF favored transitioning the two girls to mother's residence but allowing H.D. to stay with his father as he desired. At the end of the hearing, the court stated that some consideration should be given to H.D.'s desires, but concluded that allowing H.D. to remain at his current school and

providing father with parent-child contact three nights per week and occasionally an extra night would satisfy H.D.'s wishes as well as the housing voucher's fifty-one-percent requirement. Accordingly, the court issued an October 17, 2013 conditional-custody order providing that the children reside with mother, but giving father substantial parent-child contact and allowing H.D. to continue attending high school near his father's residence.

One week later, on October 24, 2013, H.D. filed a motion to reconsider in which H.D.'s attorney emphasized that H.D. "adamantly" preferred to live with his father and his father's family in the same town where he attended high school and where his friends lived. The motion stated that awarding "custody" of H.D. to his father would not cause mother to lose her housing voucher but rather, at worst, would require only that she find a smaller apartment. In a January 9, 2014 order, the superior court granted H.D.'s motion citing H.D.'s age and his strong desire to live with his father. The court noted that mother's main objection to H.D. living with father was her fear that she would lose her subsidized apartment, but stated that it was unclear whether the housing authority would take any action regarding her present apartment.

On appeal, mother argues that the superior court lacked authority to transfer custody to father without finding changed circumstances and that father is a suitable custodian. She further argues that the trial court's findings concerning the likely impact on her housing vouchers are unsupported by the record. Regarding the first argument, mother contends that the court's January 9 decision transferred custody of H.D. from her to father without evidence of changed circumstances, as required by 33 V.S.A. § 5113(b), and without finding that father was a suitable custodian, as required by 33 V.S.A. § 5318(e). According to mother, the court could not have made such findings because it held no evidentiary hearing in which a change of custody from her to father was even considered. Mother points out that at the October 10 hearing, the court excluded some evidence regarding the father's suitability as a custodian because a change of custody was not at issue. She also challenges the court's statement that H.D's adamant declaration of his desire to continue to live with his father, as reflected in his post-decision motion, was a substantial change of circumstances from the time of the October 10 hearing. She notes that H.D.'s preference was made clear at the October 10 hearing and that his declaration was made by his attorney in a motion rather than through evidence. In mother's view, the court gave undue weight to H.D.'s preference in reconsidering its October 17 order and ordering a change of custody to father.

H.D. responds to these arguments by asserting that a contested hearing was not required in this instance because the court did not rule on a motion to modify a disposition order, which would have triggered the requirements set forth in §§ 5113(b) and 5318(e). Rather, according to H.D., the court merely amended its previous order in response to his motion to reconsider, which was filed within ten days of the court's October 17 decision and thus could be considered a motion to alter or amend that decision. See Fournier v. Fournier, 169 Vt. 600, 601 (1999) (mem.) (concluding that mother's motion to reconsider served within ten days of judgment "was substantively indistinguishable from" motion to alter or amend judgment). In H.D.'s view, the trial court merely restored the pre-October 17 status quo with respect to him.

Based on our review of the record, we conclude that H.D.'s assessment of what transpired here fails to recognize the import of the trial court's order as framed. Under the conditional-custody order existing at the time of mother's motion to modify, mother had legal custody but the children resided with father. The disposition plan in effect provided concurrent goals—custody remaining with mother and mother actually caring for the children, and transfer of custody to father with shared parenting as agreed by the parties. Once mother obtained the housing, she sought to modify the existing conditional

custody order only with respect to the children's placement with father. Neither she nor father nor H.D. nor DCF proposed a change in the underlying custody order or disposition plan. At the October 10 hearing, the court made it clear that the issue it was considering was not whether any of the children would be better off living with father but, rather, whether mother's residence was suitable:

> This is not a de novo hearing about what's in the best interest of the children. It's not a modification hearing where although under the circumstances it might have been but for better or for worse it was not where there was a significant change in circumstances and we'd have to take a second look at what's in the best interests of the children. The issue is really is the mother's home adequate in order to return the kids and this answer is well there are some concerns and I admit that but there's really no reason not to do it.

The court's October 17 order maintained mother's legal custodial status, and returned physical placement of the children to her care. In its January 9 order, the superior court, in response to H.D.'s motion to reconsider, for the first time modified the conditional-custody order by transferring custody from mother to father. It did so despite a disposition plan providing for reunification with mother, without expressly considering any evidence on the suitability of father as the legal custodian, and relying on the fact of H.D.'s filing the motion alone to support its finding of changed circumstances.[1] The court's January 9 order appears to be a modification. First, the court uses the term "custody" in that order, and again in its January 17 entry, suggesting a transfer to father of custody rather than merely a continuation of H.D.'s custody with mother while residing with father. Second, the order, premised on H.D.'s age and expressed opinions, seems to signal a choice by the court of the concurrent goal of custody with father and shared parenting with mother, and a rejection of the disposition goal of returning H.D. to live with mother.

A court may modify an order in a juvenile proceeding "on the grounds that a change in circumstances requires such action to serve the best interests of the child." 33 V.S.A. § 5113(b). Absent a stipulation of the parties waiving a hearing, a modification order "shall be made after notice and hearing." Id. § 5113(c). In this case, the court gave no notice of a proposed change of custody (as opposed to H.D.'s residential placement within the context of mother's custody), and held no hearing on such a modification motion. Even if we concluded that the court could rely on the fact that H.D. filed a motion to reconsider as itself sufficient to establish a change of circumstances, the trial court did not comply with the statutory requirement that it make findings concerning father's suitability. See 33 V.S.A. § 5318(e)("Whenever the Court orders the transfer of legal custody to a noncustodial parent . . . such orders shall be supported by findings regarding the suitability of that person to assume legal custody of the child and the safety and appropriateness of the placement.").[2]

This procedural error is not harmless. The change of custody from mother to father cut to the heart of the disposition plan, and was undertaken without the opportunity for all parties to present

---

[1] The court's follow-up entry order filed twelve days later states that "[a]t the most recent hearing custody of oldest child, [H.D.], was to be transferred to Father . . . effective Feb. 1, 2014."

[2] We recognize that insofar as the court entrusted father with H.D.'s day-to-day care throughout these proceedings pursuant to mother's conditional custody order, the court may have made prior findings concerning father's suitability, at least as a temporary noncustodial-care provider. If so, they are not in the record provided to us on appeal.

pertinent evidence knowing that a change of custody (and effectively of disposition plan) was on the table. We express no opinion on the merits of the situation; a change of custody may well be warranted upon consideration of the record and the desires of the sixteen year old. But if the trial court is to make such a change, it needs to be supported by findings and conclusions based on competent evidence after due notice to the parties.

Because the court apparently transferred custody in its January 9 order without meeting the statutory requirements for modifying a disposition order and transferring custody, the order transferring custody must be reversed and the matter remanded for further proceedings. If H.D. seeks to change custody to father or to modify the disposition plan as it relates to him, the court should hold a hearing and make the statutorily required findings.[3]

With respect to the impact of the change of custody on mother's access to affordable housing for H.D. and the other two children, the trial court's conclusion that the impact of the change was not entirely clear was supported by the record. The DCF caseworker testified that if only two of the children reunified with mother then her understanding was that when mother's eligibility for Section 8 housing was next reassessed, mother and her children might be required to move to a two-bedroom apartment. She did not know what would happen if no apartment was available. We do not suggest that mother's eligibility for or access to housing for her other two children is relevant or determinative with respect to H.D.'s best interests, but affirm the trial court's conclusion that, in any event, the evidence concerning this factor was inconclusive.

Reversed and remanded.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice

---

[3] If we have misunderstood the trial court's intent in issuing the January 9 order, the trial court may also amend the order to clarify.

4